```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
BARRY BLANK, on behalf of himself
and all others similarly situated,
WILLIAM D. WITTER PARTNERS, LP,
ROBERT D. HERPST, DAVID HUST, and
REG PARTNERS, LLP,
                                         MEMORANDUM AND ORDER
               Plaintiffs,               03-CV-2111 (JS)(MLO)

      -against-


VICTOR JACOBS, HERMAN JACOBS,
DAVID SHAMILZADEH, JACK JACOBS,
KMPG LLP, MAYER RISPLER & COMPANY,
P.C., and ARTHUR ANDERSEN LLP,

               Defendants.
----------------------------------X
APPEARANCES:[1]
For Plaintiffs:     Stephen T. Rodd, Esq.
                    Abbey Spanier Rodd & Abrams, LLP
                    212 East 39th Street
                    New York, New York 10016

For Defendants:
KPMG LLP            Gary F. Bendinger, Esq.
                    Kevin A. Burke, Esq.
                    Kostas D. Katsiris, Esq.
                    Howrey LLP
                    Citigroup Center
                    153 East 53rd Street, Floor 54
                    New York, New York 10022

Arthur Andersen     Christopher R. Harris, Esq.
LLP                 Robert J. Malionek, Esq.
                    Janie Byalik, Esq.
                    Latham & Watkins, LLP
                    885 Third Avenue
                    New York, New York 10022

SEYBERT, District Judge:

          Pending   before   the   Court   is   a   motion   for   class
```

---

[1] Mayer Rispler & Co., P.C. did not appear, as there is a pending settlement before the Court.

certification by the proposed Lead Plaintiffs, REG Partners, LLP[2] ("REG") and Robert Herpst ("Herpst") (collectively, "Lead Plaintiffs"), pursuant to Rule 23 of the Federal Rules of Civil Procedure. For the reasons that follow, the Court DENIES the motion for class certification without prejudice, and with leave to renew. Plaintiffs may put forth alternate proposed lead plaintiffs within sixty days of the issuance of this Memorandum & Order.

BACKGROUND

I. Factual Background

Lead Plaintiffs are the proposed class representatives for all those who purchased Allou Class A common shares during the class period. (Pls' Mem. in Supp. Of Class Cert. 2). Allou was a public company, and was traded on the American Stock Exchange ("AMEX") during the proposed class period. (3d Consol. Compl. ¶ 15). It distributed various personal care products and prescription pharmaceuticals to major retailers. (Id. ¶ 15).

Until June 24, 2001, Mayer Rispler & Co., P.C. was Allou's auditor and issued reports for the fiscal year ended March 31, 2000, certifying that the financial statements had been audited in accordance with Generally Accepted Accounting Standards ("GAAS"). (Id. ¶ 30). Mayer Rispler also certified, that in its opinion, the financial position of Allou was fairly represented and

---

[2] REG Partners, LLP was known as William D. Witter Partners, LP in previous court documents. The Court recognizes the name change.

in accordance with Generally Accepted Accounting Principles ("GAAP"). (Id. ¶ 30). Arthur Andersen was the independent auditor for Allou for the fiscal year that ended March 31, 2001. (Id. ¶ 31). Andersen also issued similar certification reports, reflecting the financial situation of Allou, for that year. (Id. ¶ 31). In addition, Andersen reviewed the financial reports that were included in Allou's Quarterly Reports filed with the Securities and Exchange Commission ("SEC") on Form 10-Q in 2001 and 2002. (Id. ¶ 31). KPMG then became the independent auditor, issuing unqualified reports for the fiscal year ended March 31, 2002. (Id. ¶ 33).

On the night of September 25, 2002, a fire destroyed Allou's Brooklyn warehouse that had been used to store inventory. (Id. ¶¶ 7, 57). Allou had insurance on the inventory including the profit that could be made based on the value of the inventory. On November 7, 2002, the New York City Fire Department finished its investigation, and concluded that the fire was the result of arson. (Id. ¶¶ 7, 57). Over the next few months, Allou was unable to resolve its over $100 million insurance claim regarding the warehouse fire. (Id. ¶ 57).

On April 9, 2003, Allou's lenders forced the company into an involuntary Chapter 11 bankruptcy. (Id. ¶ 61). The lenders had uncovered a large scale fraud that Allou had inflated inventory and accounts receivable through the creation of a fictitious

salesperson. (Id. ¶¶ 3, 45). The company had then borrowed money from the lenders based on these inflated numbers. AMEX halted the trading of Allou's stock shortly after the bankruptcy announcement. (Id. ¶ 9).

II. Procedural Background

Beginning May 1, 2003, seventeen class action securities complaints were filed in the Eastern District of New York. On September 18, 2003, the Court ordered the consolidation of these actions. William D. Witter Partners, LLP (now REG Partners, LLP), Robert Herpst, and David Hust were appointed as lead plaintiffs.[3] Abbey Spanier Rodd & Abrams, LLP were appointed as lead counsel for the consolidated action.

The Court dismissed Plaintiffs' First Amended Complaint on September 17, 2004, but granted leave to amend. On September 30, 2005, the Court dismissed in part the Second Amended Complaint and granted leave for Plaintiffs to amend. On September 30, 2007, the Court granted in part the motion to dismiss the Third Amended Complaint. Finally, on October 19, 2006, the Court approved a settlement and dismissed with prejudice the action between Lead Plaintiffs and Defendants Sol Naimark, Jeffery Berg, and Stuart

---

[3] Lead Plaintiffs' motion to withdraw David Hust as Co-Lead Plaintiff is unopposed by Defendants. The Court can "determine the course of proceedings" in conducting an action under Rule 23. Fed. R. Civ. P. 23(d)(1)(A). David Hust has no authority to represent the class because his company, Tealwood, does not own any shares of Allou. Accordingly, the Lead Plaintiffs' motion to withdraw is GRANTED.

4

Glasser.

Plaintiffs' current claims allege that the Auditors knew, or recklessly disregarded, the falsity of Allou's financial statements. (3d Consol. Compl. ¶ 34). In support of these claims, Plaintiffs assert that the Auditors were reckless because of deviations from appropriate audit standards, and that, if performed correctly, the audits would have revealed the fraud. (Id. ¶ 34). In their current application, Plaintiffs seek to certify a class of all owners of Allou Class A common shares for the time period of June 21, 2000 through April 9, 2003. As of the date of the application for Class Certification, Plaintiffs sought to hold (1) Mayer Rispler liable for the period from June 21, 2000 to April 9, 2003; (2) Arthur Andersen liable for the period of July 2, 2001 through April 9, 2003; (3) KPMG liable for the period from July 1, 2002 through April 9, 2003 (collectively "Auditors"). (Pls' Mem. in. Supp. of Class Cert. 2). Currently, however, Plaintiffs have sought to settle their claims with Mayer Rispler, so only Arthur Andersen and KPMG oppose this motion.

DISCUSSION

To be certified as a class, Plaintiffs must satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. Each requirement of Rule 23 must be established by a preponderance of the evidence. See Teamsters Local 445 Freight Division Pension Fund v. Bombardier Inc., 546 F.3d 196, 202 (2d Cir. 2008). To

certify a class:

> (1) a district judge may certify a class only after making determinations that each of the Rule 23 requirements has been met; (2) such determinations can be made only if the judge resolves factual disputes relevant to each Rule 23 requirement and finds that whatever underlying facts are relevant to a particular Rule 23 requirement is met; (3) the obligation to make such determinations is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement; (4) in making such determinations, a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement; and (5) a district judge has ample discretion to circumscribe both the extent of discovery concerning Rule 23 requirements and the extent of a hearing to determine whether such requirements are met in order to assure that a class certification motion does not become a pretext for a partial trial on the merits.

In re Initial Pub. Offerings Sec. Litig., 471 F.3d 24, 41 (2d Cir. 2006); see also Teamsters, 546 F.3d at 202. The Court must "receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met." Teamsters, 546 F.3d at 204 (quoting In re IPO, 471 F.3d at 41).

The Plaintiffs must satisfy the elements of Rule 23(a) and (b) in order to prevail on a motion for class certification. Rule 23(a) states:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a). Rule 23(b) poses an additional hurdle,

6

requiring a party to demonstrate at least one of the following circumstances warranting certification:

> (1) "separate actions by or against individual class members would create a risk of [either] (A) inconsistent or varying adjudications . . . which would establish incompatible standards of conduct . . . or (B) adjudications with respect to individual members of the class . . . would as a practical matter be dispositive of the interests of other members not parties to the adjudications . . . ; or (2) "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or (3) the court finds that the questions of law or fact common to members of the class predominate over questions affecting only the individuals members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

FED R. CIV. P. 23(b).

I. Rule 23(a)

   A. Rule 23(a)(1) - Numerosity

Lead Plaintiffs must show that the class is so numerous that joinder is impracticable. This section does "not mandate that joinder of all parties be impossible." Lapin v. Goldman Sachs & Co., 254 F.R.D. 168, 174 (S.D.N.Y 2008) (quoting Cent. Sts. Se. and Sw. Areas Health and Welfare Fund v. Merck-Medco Managed Care, LLC, 504 F.3d 229, 244-45 (2d Cir. 2007). Plaintiff must show "only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." Id. at 174-75.

7

A presumption of numerosity attaches when the proposed class would have more than forty members. Id. at 175 (citing Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995). In addition, "in securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." In re Vivendi Universal, S.A. Sec. Litig., 242 F.R.D. 76, 83 (S.D.N.Y 2007).

During the class period, Allou had 6,735,351 Class A common shares outstanding. (Pls. Ex. A). In addition, Lead Plaintiffs have submitted an affidavit that thousands of potential members of the class were mailed notices and that hundreds of banks, brokers, and other financial institutions were provided with copies of the notice to furnish to potential class members. (Pls. Ex. B). The amount of prospective members of the class is thus far greater than forty and thus numerosity is presumed. See Consol. Rail Corp., 47 F.3d at 483. There is also evidence that the stock was traded on a regular basis and that a large number, at times approaching half a million shares, were traded per day. (Def. KPMG Ex. 6). This satisfies the numerosity requirement. See In Re Vivendi, 242 F.R.D. at 83. Moreover, since Allou was traded on the AMEX, joinder would be impracticable because class members could be scattered across the country making a class action appropriate.

See Lapin, 254 F.R.D. at 174. Thus, Plaintiffs have shown by a preponderance of the evidence that the numerosity requirement of Rule 23(a)(1) is satisfied.

B. Rule 23(a)(2) - Commonality

Plaintiffs must also show that questions of law or fact common to the class exist. FED. R. CIV. P. 23(a)(2). "The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact." Cent. States, 504 F.3d at 245 (quoting Marisol A. v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997)). While not every "issue must be identical as to each class member, plaintiff must identify some unifying thread among the members' claims that warrants class treatment." Vivendi, 242 F.R.D. at 84 (internal quotations and citations omitted). In securities fraud litigation, the commonality requirement "has been applied permissively." Lapin, 254 F.R.D. at 175.

Here, Plaintiffs have alleged common questions exist as to (1) whether federal securities laws were violated; (2) whether statements made by Defendants misrepresented material facts about Allou; and (3) whether the members of the class sustained damages as a result of these misrepresentations and, if so, what the appropriate measure of damages would be. (3d Consol. Compl. ¶ 39); See, e.g., Vivendi, 242 F.R.D. at 84. On the other hand, Defendants argue that each of the audits were conducted separately, and therefore, common questions of fact do not exist.

9

Indeed it appears that Plaintiffs have shown by a preponderance of the evidence that common questions exist. Accordingly, the Court will examine the next element.

C. Rule 23(a)(3) - Typicality

To satisfy Rule 23(a)(3) it is necessary that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality requires "that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." Cent. States, 504 F.3d at 245. This requirement does not "require that the situations of the named representatives and the class members be identical." Lapin, 254 F.R.D. at 175. However, plaintiffs' claim and the claims of the class members must be "so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Marisol, 126 F.3d at 376 (quoting Gen. Tel. Co. of the Sw., 457 U.S. 147, 157 n.13, 102 S. Ct 2364, 72 L. Ed. 2d 740 (1982)).

Defendants assert that Lead Plaintiffs are subject to unique defenses that prevent them from fulfilling the typicality requirement. "As to the class representative specifically, 'where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation[,]' certification of

the class is improper because he or she can no longer act in the best interest of the class." Rocco v. Nam Tai Elecs., 245 F.R.D. 131, 135 (S.D.N.Y 2007) (quoting Baffa v. Donaldson, Lufkin, & Jenrette Sec. Corp., 222 F.3d 52, 59 (2d Cir. 2000)). In Rocco, 245 F.R.D. at 135, the Court indicated that a unique defense could arise if the plaintiff was "relying not on the market, but on his own assessment of the value of the stock." The Court also held that "a named plaintiff who is subject to an arguable defense of non-reliance on the market has been held subject to a unique defense, and therefore, atypical of the class under Rule 23(a)(3)." Id. (quoting In re Harcourt Brace Jovanovich, Inc., 838 F. Supp. 109, 113 (S.D.N.Y. 1993)). While "[t]he defendant need not show at the certification stage that the unique defense will prevail", the defendant must show that the claim is "meritorious enough to require the plaintiff to devote considerable time to rebut the unique defense." Lapin, 254 F.R.D. at 179 (internal quotation marks and citations omitted). However, the Court should not "disqualify a named plaintiff based upon any groundless, far-fetched defense that the defendant manages to articulate." Id. Moreover, "[t]he rule barring certification of plaintiffs subject to unique defenses is not 'rigidly applied in this Circuit;' in fact, 'a representative may satisfy the typicality requirement even though that party may later be barred from recovery by a defense particular to him [or her] that would not impact other class

11

members." Id. (quoting In re Frontier Ins. Group Sec. Litig., 172 F.R.D. 31, 41 (E.D.N.Y 1997)) (collecting cases).

1. REG Partners, LLP

Defendants assert that as one of the Lead Plaintiffs, REG Partners, LLP, would be subject to unique defenses because it purchased seventy-three percent of its shares after the warehouse fire was deemed suspicious, and after it received reassurance from Allou's management. (Def. KPMG Ex. 14). Defendants claim that REG did not rely on the statements of the Auditors in purchasing shares because it did not rely on the price of the stock as a reflection of the value of that stock. (Def. KPMG Mem. in Opp. 8). Defendants maintain that REG received inside information from conversations with the President and Chief Financial Officer David Shamilzadeh ("Shamilzadeh"), that it relied on in making purchases of the stock. (Def. KPMG Mem. in Opp. 7). REG admitted that there may have been times when it received information from the company that was not otherwise available. (Def. KPMG Ex. 3 61:21-24). While REG may have purchased some stock prior to the fire on the basis of the price, relied on the price in determining that the market had overreacted, and felt that the price did not reflect the true value of the stock, the Lead Plaintiffs fail to prove this by a preponderance of the evidence. In fact, Lead Plaintiffs offer no evidence in their brief, and they merely attempt to refute the claims of Defendants and offer hardly any evidence that REG relied

on the audits or stock price in their reply brief.  Indeed, the evidence indicates that REG was relying on its own assessment of the value of the stock for at least those purchases made after the September 2002 fire.  (Def. KPMG Ex. 3 236:10-21); (Def. Arthur Andersen Ex. 3 256:2-6); see Rocco, 245 F.R.D. at 135.  This defense does threaten to become the focus of the litigation with respect to REG, and REG will be forced to spend considerable time rebutting the defense.  See Lapin, 254 F.R.D. at 179; Rocco, 245 F.R.D. at 135.

Moreover, REG wholly fails to satisfy its burden of proving, by a preponderance of the evidence, that it is a typical class member.  See Teamsters, 546 F.3d at 203.  The Plaintiffs' Memorandum of Law in Support of their Motion for Class Certification fails to present any evidence of typicality through "affidavits, documents, or testimony." Teamsters, 546 F.3d at 204. The only evidence presented by Lead Plaintiffs is a 10-Q report establishing the amount of shares outstanding, an affidavit in support of numerosity, and a resume of all the achievements of the law firm hoping to be appointed counsel. (See generally Decl. of Stephen T. Rodd in Supp.)  REG has not established by a preponderance of the evidence that the interests of the absent class members will be protected during this litigation.  See Marisol, 126 F.3d at 376.  REG did not buy any stock until after the 2000 and 2001 audits had been released.  (Def. KPMG Ex. 14).

13

As discussed in more detail below, in an efficient market, the 2000 audit would have been irrelevant to the price of the stock because it had been superceded by the 2001 audit. See Credit Suisse, 250 F.R.D. at 145-47. Therefore, REG cannot be typical of a class member who purchased the stock prior to the 2001 audit because REG could not have relied on the 2000 audit. See Angel Music, Inc. v. ABC Sports, Inc., 112 F.R.D. 70, 75 (S.D.N.Y. 1986) ("[W]e assert that a plaintiff who has no cause of action against the defendant cannot 'fairly and adequately protect the interests' of those who do have such causes of action. This is true even though the plaintiff may have suffered an identical injury at the hands of a party other than the defendant. . . ." (quoting LaMar v. H & B Novelty & Loan Co., 489 F.2d 461, 465-66 (9th Cir. 1973))); In re Investors Funding Corp. of N.Y. Sec. Litig., 523 F.Supp. 550, 558 (S.D.N.Y. 1980). REG will be subject to unique defenses which threaten to become the focus of the litigation. See Rocco, 245 F.R.D. at 135. Thus, REG would unable to adequately protect the interests of those who do have a cause of action. See Angel Music, 112 F.R.D at 75.

### 2. Robert Herpst

Defendants also claim that Herpst's claims are not typical of the class member's claims and that he would also be subject to unique defenses. (Def. Mayer Rispler Mem. in Opp. 16). Defendants maintain that Herpst did not rely on the Auditor's

statements in deciding to purchase the stock and that he relied solely on his belief that the stock was undervalued because of the fire. (Def. KPMG Mem. in Opp. 22-23). While Herpst may have relied on the price of the stock in determining that the stock was undervalued, he was also relying on his own assessment of the value of the stock. (Def. KPMG Ex. 4 109:2-110:22); see Rocco, 245 F.R.D. at 135. This subjects him to possibly unique defenses and renders Herpst atypical. See Rocco, 245 F.R.D. at 135. Assuming, arguendo, that he did rely on the price of the stock, Herpst is still subject to unique defenses. An efficient securities market absorbs new information as the information is released and the price reflects that information almost immediately. In re Credit Suisse First Boston Corp. (Lantronix, Inc.) Analyst Sec. Litig., 250 F.R.D. 137, 145-47 (S.D.N.Y 2008) (citing Basic Inc. v. Levinson, 485 U.S. 224, 241-42, 108 S. Ct. 978, 99 L. Ed. 2d 194 (1988)). Assuming that the AMEX is an efficient market as Lead Plaintiffs argue, the market should have absorbed and reflected the information in the price from the 2000, 2001, and 2002 audits almost immediately after the audits were released. Once a later audit was released, the earlier one becomes irrelevant in determining the price of the stock because it has been superceded. See Credit Suisse, 250 F.R.D. at 145-47. Herpst did not buy any Allou stock until November 2002, after the third and final audit of this litigation. Therefore, it is difficult to believe, and Herpst

15

has offered no evidence, that he relied on the previous audits, if he relied on the audits at all, and that renders him atypical. Thus, he would be subject to unique defenses by Arthur Andersen and Mayer Rispler that threaten to become the focus of the litigation. See Rocco, 245 F.R.D. at 135. Herpst cannot be typical of a class member who purchased stock right after the 2000 audit because he only purchased stock in late 2002, more than four months after the 2002 audit was released, and over two years from the time that the first audit in this case was released. (Def. KPMG Ex. 17, 19); see Angel Music, 112 F.R.D. at 75.

Additionally, Herpst admitted in his deposition that the most important risk factor facing the company was whether or not the insurance claim would be paid. (Def. KPMG Ex. 4 95:21-23). When asked why he purchased the stock in the face of this risk, he admitted to receiving assurances from Shamilzadeh that came during private telephone conversations. (Def. KPMG Ex. 4 95:24-96:10, 98:2-11). This is in conflict with the claim made by Plaintiffs that Herpst is typical because he bought the stock based on "uniform, public statements, made in Allou press releases, and SEC filings that contained material misrepresentations concerning Allou's sales of health, beauty, and pharmaceutical products." (Pls. Mem. in Supp. 16). This also threatens to become the "focus of the litigation" and is indicative of Herpst's "non-reliance on the market" because Lead Plaintiffs have failed to provide any

evidence that the typical class member spoke to management through private telephone calls. See Rocco, 245 F.R.D. at 135. While the unique defense rule is "not rigidly applied in this Circuit", Lapin, 254 F.R.D. at 179, the Plaintiffs here have failed to offer any evidence through "affidavits, documents, or testimony" that Herpst is typical of the other plaintiffs in this case and have not met their burden of meeting every requirement of Rule 23 by a preponderance of the evidence. Teamsters, 546 F.3d at 204.

## II. Rule 23(b)

In addition to the foregoing factors of Rule 23(a), Plaintiffs must also satisfy the requirements of Rule 23(b). Here, Plaintiffs seek to proceed under Rule 23(b)(3). Rule 23(b)(3) requires Plaintiffs to demonstrate that (1) common questions of law and fact will predominate the case, and (2) a class action will be superior to other available methods for adjudication. As to the first element, the Court notes that, for the reasons mentioned earlier, the common questions of law and facts would not predominate the case if the Court permitted the Class to go forward as proposed, with the proposed Lead Plaintiffs. Therefore, as constructed, the current application fails to meet the required showing under Rule 23(b).

## CONCLUSION

For the foregoing reasons, the Court DENIES the motion for class certification without prejudice, and with leave to renew.

Plaintiffs may put forth alternate proposed lead plaintiffs within sixty days of the issuance of this Memorandum & Order.

                                                         SO ORDERED

                                             /s/ JOANNA SEYBERT
                                             Joanna Seybert, U.S.D.J.

Dated:    September 30, 2009
           Central Islip, New York