UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------x
BARRY BLANK, on behalf of himself
and all others similarly situated,
WILLIAM D. WITTER PARTNERS, LP;
ROBERT D. HERPST; DAVID HUST; REG
PARTNERS, LLP; CHARLES PAUL COCO;                     <u>MEMORANDUM & ORDER</u>
EDWARD J. DESAUTELS; CAROL B. HABA;                   03-CV-2111(JS)(WDW)
KELEL YETEVE D'JERUSALEM,
individually and behalf of all
others similarly situated; B & E
EIDORFER FOUNDATION, individually
and on behalf of all others similarly
situated,

                              Plaintiffs,

              -against-

VICTOR JACOBS; HERMAN JACOBS; DAVID
SHAMILZADEH; JACK JACOBS; JEFFREY
RABINOVICH; SOL NAIMARK; JEFFREY
BERG; STUART GLASSER; KPMG LLP;
MAYER RISPLER & COMPANY, P.C.; and
ARTHUR ANDERSON LLP,

                              Defendants.
-----------------------------------------x
APPEARANCES
For Plaintiffs and the
Class:                        Stephen T. Rodd, Esq.
                              Stephanie Amin Giwner, Esq.
                              Orin Kurtz, Esq.
                              Nancy Kaboolian, Esq.
                              Abbey Spanier, LLP
                              212 East 39th Street
                              New York, NY 10016


For Plaintiffs:
Blank[1]:                     Samuel Kenneth Rosen, Esq.
                              Harwood Feffer LLP
                              488 Madison Avenue, 7th Floor
                              New York, NY 10022

---

[1] Specified appearances are in addition to those of class
counsel.

```
William D. Witter
Partners, LP; Herpst;
and Hust:                Mark Casser Gardy, Esq.
                         Gardy & Notis, LLP
                         440 Sylvan Avenue, Suite 110
                         Englewood Cliffs, NJ 07632


Coco:                    David A. Rosenfeld, Esq.
                         Robbins Geller Rudman & Dowd, LLP
                         58 South Service Road, Suite 200
                         Melville, NY 11747


Desautels:               Steven D. Resnick, Esq.
                         Barroway Topaz Kessler Meltzer &
                            Check LLP
                         280 King of Prussia Road
                         Radnor, PA 19087


Haba:                    Patrick A. Klingman, Esq.
                         Shepherd Finkelman Miller & Shah, LLC
                         65 Main Street
                         Chester, CT 06412


D'Jerusalem and
B & E Eidorfer
Foundation:              Eric J. Belfi, Esq.
                         Labaton Sucharow & Rudoff LLP
                         100 Park Avenue
                         New York, NY 10017


For Defendants:
Victor Jacobs,
Herman Jacobs,
David Shamilzadeh,
Jack Jacobs, Jeffrey
Rabinovich, Sol Naimark,
Jeffrey Berg, Stuart
Glasser, KPMG LLP:       Steven G. Schulman, Esq.
                         Milberg Weiss Bershad & Schulman LLP
                         One Pennsylvania Plaza
                         New York, NY 10119
```

| Jeffrey Rabinovich: | Joseph Ted Donovan, Esq.<br>Finkel Goldstein Rosenbloom & Nash LLP<br>26 Broadway, Suite 711<br>New York, NY 10004 |
|---|---|
| Sol Naimark, Jeffrey<br>Berg and Stuart<br>Glasser: | Gregory G. Ballard, Esq.<br>Gregory A. Markel, Esq.<br>Ronit Setton, Esq.<br>Cadwalader, Wickersham & Taft, LLP<br>One World Financial Center<br>New York, NY 10281 |
| Mayer Rispler &<br>Company, P.C.: | Benjamin Zelermyer, Esq.<br>Steinberg & Cavaliere, LLP<br>50 Main Street, 9th Floor<br>White Plains, NY 10606 |
| KPMG LLP: | Kevin A. Burke, Esq.<br>Sidley Austin LLP<br>787 Seventh Avenue<br>New York, NY 10019 |
| Arthur Andersen LLP: | Christopher Harris, Esq.<br>Robert John Malionek, Esq.<br>Nia J.C. Castelly, Esq.<br>Latham & Watkins LLP<br>885 Third Avenue, Suite 1000<br>New York, NY 10022 |

SEYBERT, District Judge:

This case involves a securities class action brought on behalf of all purchasers of the Class A Common Stock of Allou Health & Beauty Care, Inc., ("Allou") between June 22, 1998 and April 9, 2003. Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiffs REG Partners, LLP, and Robert D. Herpst, and Proposed Lead Plaintiffs and Class Representatives Charles Paul Coco and Edward J. Desautels

(collectively "Plaintiffs"), move this Court for entry of an Order: (1) directing distribution of the Net Settlement Fund, after deduction of certain payments, to Class Members whose Proofs of Claim have been accepted; (2) approving the administrative determinations of Berdon Claims Administration, LLC ("Berdon"), the Claims Administrator, accepting and rejecting submitted claims; and (3) directing payment of $99,583.40 out of the Gross Settlement Fund to Berdon for fees and expenses incurred and to be incurred in connection with services performed and to be performed in giving notice to the Class, preparing tax returns for the Gross Settlement Fund, and processing the Proofs of Claim. For the reasons set forth below, Plaintiffs' motion is GRANTED IN PART.

<u>BACKGROUND</u>

The Court's November 29, 2012 Memorandum and Order (the "November Order" Docket Entry 327) sets forth in detail the procedural and factual background of this action, with which familiarity is presumed.

Briefly, on May 1, 2003, Plaintiff Barry Blank brought an action against various directors and auditors of Allou alleging claims under the Securities Exchange Act of 1934. (Complaint, Docket Entry 1.) Thereafter, this action was consolidated with several other actions filed in the United States District Court for the Eastern District of New York as

4

class actions brought on behalf of all purchasers of the Class A Common Stock of Allou between June 22, 1998 and April 9, 2003 (the "Class Period"), alleging claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder. (Court Order dated July 8, 2003, Docket Entry 29.)

Throughout the course of litigation, Plaintiffs entered into several partial settlements with certain Defendants. First, Plaintiffs settled with Defendants Stuart Glasser, Jeffrey Berg, and Sol Naimark, and the Court entered an Order of Final Judgment and Dismissal on October 19, 2006. (See Docket Entry 152.) Subsequently, Plaintiffs settled with Defendant Mayer Rispler & Company, P.C., which the Court approved on November 16, 2009. (See Docket Entry 255). Finally, Plaintiffs entered into settlements with Defendants Arthur Andersen LLP and KPMG LLP, which the Court approved on November 19, 2010. (See Docket Entry 321.) Thereafter, Plaintiffs agreed to dismiss their claims against the remaining Defendants.

The proceeds from all four of the settlements have been placed into a single fund (the "Settlement Fund") totaling approximately $1,750,000. (Memo. in Supp. of Motion for Settlement, Docket Entry 296.) Currently pending before the

Court is Plaintiffs' motion for distribution of the Settlement Fund.

In the November Order, however, the Court requested additional information in order to rule on Plaintiffs' motion. Plaintiffs have since filed the necessary information, and Plaintiffs' motion is ripe for review.

DISCUSSION

Federal Rule of Civil Procedure 23 provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." FED. R. CIV. P. 23(e). Although Plaintiffs' motion is unopposed, the Court "sits . . . as a guardian." RMED Int'l, Inc. v. Sloan's Supermarkets, Inc., No. 94-CV-5587, 2003 WL 22251323, at *1 (S.D.N.Y. Sept. 30, 2003) (internal quotations marks and citation omitted). Further, settlement administration under Rule 23 "often requires courts to use their equitable powers . . . . A primary use of these equitable powers is balancing the goals of expedient settlement distribution and the consideration due to late-arriving class members." In re Orthopedic Bone Screw Prods. Liab. Litig., 246 F.3d 315, 321 (3d Cir. 2011).

Plaintiffs request that the Court approve the decisions and fees and expenses of Claims Administrator, Berdon.

The Court will first address Berdon's decisions before turning to its fees and expenses.

I.  Berdon's Decisions

Berdon made the following determinations: (1) to allow properly documented claims to share in the settlement, including claim forms that were received after the filing deadline; (2) to tentatively reject inadequately documented or completely undocumented claim forms subject to correction; and (3) to completely reject duplicate claims and claims forms with no eligible transactions in Allou Class A stock.  (See Am. Rosenbaum Decl. ¶ 9.)

A.  Properly Documented Claims

The Court APPROVES of Berdon's decision to accept properly and timely filed claims forms.

Properly documented claim forms that were postmarked after the cut-off date of January 12, 2011, however, require some additional inquiry.  As this Court noted in its November Order, there are four factors to address in considering whether to accept untimely claims in a class action settlement.  These factors (the "Pioneer factors") include: "1) the danger of prejudice to the nonmovant; 2) the length of the delay and its potential effect on judicial proceedings; 3) the reason for the delay, including whether it was within the reasonable control of the movant; and 4) whether the movant acted in good faith."  In

re Orthopedic Bone Screw Prods. Liab. Litig., 246 F.3d at 322-23 (citing Pioneer Inv. Servs. v. Brunswick Assoc. Ltd. P'ship, 507 U.S. 380, 395, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993)); accord In re Oxford Health Plans, Inc., 383 F. App'x 43, 45 (2d Cir. 2010); In re Visa Check/Mastermoney Litig., No. 96-CV-2538, 2009 WL 7230400, at *1 (E.D.N.Y. Nov. 19, 2009). Especially relevant to this determination is the reason for the delay and whether it was in the claimants' control. See In re Oxford Health Plans, Inc., 383 F. App'x at 45 ("[B]ecause in the ordinary case there will be little prejudice or disruption caused by allowing a late-submitted claim, we focus our analysis on the asserted reason for the claimant's delay"); see also In re Gilat Satellite Networks, Ltd., No. 02-CV-1510, 2009 WL 803382, at *6 (E.D.N.Y. Mar. 25, 2009) ("Because there is no showing of delay or prejudice, the late filed claims should be included in the class for settlement disbursement."). Some courts have likened this inquiry to a showing of "excusable neglect." See In re Auction Houses Antitrust Litig., No 00-CV-0648, 2004 WL 3670993, at *4 (S.D.N.Y. Nov. 17, 2004).

The Court finds that inclusion of the late-filed claims would not prejudice Defendants. Here the Gross Settlement Fund consists of a fixed amount with no reversionary

interest to Defendants. (Supp. Br. at 6-7.[2]) Therefore, inclusion of late-filed claims will have no impact upon the amount of settlement funds Defendants will ultimately need to pay. See In re Orthopedic Bone Screw Prods. Liab. Litig., 246 F.3d at 323-24 (finding little to no prejudice because defendant's liability was capped); contra Dahingo v. Royal Carribean Cruises, Ltd., 312 F. Supp. 2d 440, 447 (S.D.N.Y. 2004) (prejudice found where defendant was entitled to receive back any excess not paid out for claims, attorneys' fees and costs, or administrative expenses).

In addition, there is nothing to suggest that any of the claimants acted with less than good faith in failing to timely submit their claim forms. In re Orthopedic Bone Screw Prods. Liab. Litig., 246 F.3d at 329 ("No party has alleged that Sambolin exhibited less than good faith in seeking redress for his injury.").

Thus, the Court focuses on the length and reasons for delay. In response to the Court's November Order, Plaintiffs submitted a supplemental memorandum of law and the Declaration of Orin Kurtz in which Plaintiffs include twelve declarations from late-filing Class members. The Court will consider each of these in turn.

---

[2] "Supp. Br." refers to Plaintiffs' Supplemental Memorandum of Law in Support of Motion For Distribution of Net Settlement Fund, Docket Entry 329.

First, the Court APPROVES of Berdon's decision to allow the claims of Lead Plaintiff REG Partners, LLP ("REG"). Richard E. Greulich, President and CEO of REG Capital, attempted to obtain brokerage statements for trades in Allou stock at least two months in advance of the cut-off date. (Greulich Decl. ¶ 6.[3]) The broker who executed the trades, however, would not release records regarding REG's trades in Allou. (Greulich Decl. ¶ 6.) Mr. Greulich then attempted to obtain the records from the accounting firm that performed audits of REG. (Greulich Decl. ¶ 6.) The accounting firm was able to obtain the requested documentation, but only after a manual search. (Greulich Dec. ¶¶ 6-7.) Mr. Greulich then immediately forwarded the records to counsel, and REG's claims form was postmarked February 9, 2011. (Greulich Decl. ¶ 8.) The Court finds that under the circumstances as Mr. Greulich describes, REG has shown excusable neglect. See In re Authentidate Holding Corp. Sec. Litig., No. 05-CV-5323, 2013 WL 324153, at *2 (S.D.N.Y. Jan. 25, 2013) (claimant's explanation that transaction records were maintained by third parties, combined with the lack of prejudice, persuaded court that there was excusable neglect); In re Auction Houses Antitrust Ltig., 2004 WL 3670993, at *8 (late filing was excusable where claimant acted promptly); In re Crazy

---

[3] The Greulich Declaration is Exhibit B to the Kurtz Declaration, filed at Docket Entry 331.

Eddie Sec. Litig., 906 F. Supp. 840, 847 (E.D.N.Y. 1995) (allowing claims where reasons for lateness involved factors beyond the control of the claimant).

Second, the Court APPROVES of Berdon's decision to include the claims of Gregory S. Golczewski, on behalf of the TRP Total Equity Market Index Fund, and William T. Salem. Mr. Salem lives in a retirement community and, although Mr. Salem signed his claim form on January 12, 2011 and timely left his mail for pickup, his claim form was not postmarked until January 18, 2011. (Kurtz Decl. Ex. C.) Similarly, Mr. Golczewski submitted a claim form postmarked January 20, 2011 due to a tracking error. (Kurtz Decl. Ex. M.) These delays were minimal and tardiness due to a mistake such as postal and mailing error is excusable. See In re Crazy Eddie Litig., 906 F. Supp. at 847 (finding excusable neglect where claimant asserted mailing mistake or computer error).

Third, the Court APPROVES of Berdon's decision to include the late-filed claims of Mark Chaffins and Roy O. Brady, Jr. Mr. Chaffins' claim form was postmarked within a month of the cut-off date and Mr. Brady's form was postmarked by March 2, 2011. (Supp. Br. at 4.) In addition, in both instances, the respective class members did not know or receive notice of the settlement through no fault of their own. (Kurtz Decl. Exs. G, H.) As such, they have demonstrated excusable neglect. See In

re Auction Houses Antitrust Litig., 2004 WL 3670993, at \*6 (late claimant that likely did not receive notice met its burden of showing excusable neglect).

Fourth, Cecilia Ness experienced a series of health issues which prevented her from filing the claim form until approximately April 4, 2011.  (Kurtz Decl. Ex. I.)  As health and medical issues constitute excusable neglect, see In re Crazy Eddie Sec. Litig., 906 F. Supp. at 847, the Court APPROVES of inclusion of her claim.

Finally, however, the Court DENIES Berdon's decision to include the remaining late claims.  More specifically, Daniel Heisman, who filed claims postmarked on July 22, 2011 for himself as well as for Daniel E. Heisman SEP IRA and the Daniel E. Heisman Rollover IRA, accidentally misplaced the notice and claim form.  (Kurtz Decl. Exs. D, E, F.)  Although excusable neglect is an "elastic concept," see Pioneer Inv. Servs., 507 U.S. at 392, misplacement of the forms without any further explanation other than believing it would not be problematic to submit a late claim does not constitute excusable neglect, particularly given a delay of over six months.  See In re Auction Houses Antitrust Litig., 2004 WL 3670993, at \*9 (secretary's misplacement of the claim forms, along with other reasons, was insufficient to demonstrate excusable neglect).

Likewise, Keen Vision Fund I LP, Keen Vision Fund II LP, and Keen Microcap Value Fund LLP submitted claims postmarked August 19, 2011 because "the client did not have a class action program in place" until May 27, 2011. (Kurtz Decl. Exs. J, K, L.) This reasoning, however, does not provide any explanation of lateness outside of the claimants' control or why the information could not have reasonably been obtained prior to the cut-off date. See In re Oxford Health Plans, Inc., 383 F. App'x at 46 (finding that District Court did not abuse its discretion in denying claim where "[i]t was entirely within [claimant's] 'reasonable control' to file a timely claim with respect to its holdings in the Berger funds."). Although the Court does not limit its inquiry solely to whether the circumstances were beyond the claimant's control, see Pioneer Inv. Servs., 507 U.S. at 392, failure to have a "class action program" in place, culminating in a seventh month delay, does not alone constitute excusable neglect.

Plaintiffs have not provided the length or reason for delay with respect to any additional claimants, and the Court therefore cannot determine whether they have demonstrated excusable neglect. Accordingly, such claims are DENIED.

B. Claims Not Documented

The Court APPROVES of Berdon's decision to reject any claims not properly documented unless any of those claimants has

been able to cure the deficiencies prior to this Memorandum and Order. (See Am. Rosenbaum Decl. § 9(b).) See Dahingo, 312 F. Supp. 2d at 449 (claimants who submitted unsigned forms must be given the opportunity to cure the defect). As Plaintiffs' supplemental memorandum notes, no such corrections have been made. Of course, there must eventually be some finality to these inquiries, and accordingly such claims are not included in distribution. See In re Crazy Eddie Sec. Litig., 906 F. Supp. at 846 ("However, as a matter of judicial administration and fairness to all parties, even this concern for protecting class members must give way to finality.").

C. Ineligible Claims

Moreover, the Court APPROVES of Berdon's decisions to reject any duplicate claims or claims with no eligible transactions in Allou Class A common stock. (See Am. Rosenbaum Decl. § 9(c).) Rejection of such claims is appropriate and they should not be included in the settlement distribution. See Shields v. Goldome, No. 88-CV-4765, 1991 WL 113263, at *2 (S.D.N.Y. June 20, 1991).

II. Berdon's Fees and Expenses

As Claims Administrator, Berdon was responsible for, inter alia, printing and mailing notice to the Class for each of the four settlements, effecting publication of the Summary Notice of Settlement for each settlement, processing the claims,

preparing tax returns for the Gross Settlement Fund, and distributing the Net Settlement Fund to accepted claimants. The Court has reviewed the affidavits of Michael Rosenbaum, the Managing Director of Berdon, and the accompanying invoices which detail the various services that Berdon provided and out-of-pocket expenses incurred. (See, e.g., Am. Rosenbaum Aff. Ex. G., Docket Entry 330) Berdon's services were appropriate and in accord with the types of services for which courts in this circuit have approved claims administrators' fees. See RMED Int'l, Inc., 2003 WL 22251323, at *2 (finding Berdon's fees and expenses for services nearly identical to the case at hand to be reasonable); Presidential Life Ins. Co. v. Miliken, No. 92-CV-1151, 1997 WL 727497, *5-6 (S.D.N.Y. Nov. 20, 1997) (claims administrator's services included, among other things, processing proofs of claims, assisting in administering the fund, and calculating taxes); Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 741 F. Supp. 84, 88 (S.D.N.Y. 1990) (approving a total of $507,684.45 to settlement administrator for services in administering the settlement fund). Accordingly, Berdon is entitled to the requested amount of $99,583.40 for its fees and expenses.

<u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' motion for distribution of the Settlement Funds is GRANTED IN PART.

Accordingly, it is hereby:

**ORDERED** that the administrative determinations of the Claims Administrator accepting the claims shown an Exhibit C to the Amended Rosenbaum Affidavit, with the exception of certain claims submitted after January 12, 2011, as specified above, are approved, and said claims are hereby accepted; and it is further

**ORDERED** that the administrative determinations of the Claims Administrator rejecting the claims shown on Exhibits D and E to the Amended Rosenbaum Affidavit are approved, and said claims are hereby rejected; and it is further

**ORDERED** that Berdon Claims Administration LLC be paid the sum of $99,583.40 from the Gross Settlement Fund for the balance of its fees and expenses incurred and to be incurred in connection with the services performed and to be performed in giving notice to the Class, preparing tax returns for the Gross Settlement Fund, processing the Proofs of Claim, and administering and distributing the Net Settlement Fund; and it is further

**ORDERED** that the balance of the Gross Settlement Fund, after deducting the payments previously allowed and set forth

herein (the "Net Settlement Fund"), shall be distributed to the Authorized Claimants in accordance with this Memorandum and Order in proportion to the Recognized Claim allocable to each such eligible claimant as shown on such printout; and it is further

**ORDERED** that the payments to be distributed to the Authorized Claimants shall bear the notation "CASH PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION 180 DAYS AFTER ISSUE DATE." Plaintiffs' Counsel and the Claims Administrator are authorized to take appropriate action to locate and/or contact any eligible claimant who has not cashed his, her, or its distribution within said time; and it is further

**ORDERED** that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Gross Settlement Fund or the Net Settlement Fund are released and discharged from any and all claims arising out of such involvement, and all Class Members, whether or not they are to receive payment from the Net Settlement Fund, are barred from making any further claim against the Net Settlement Fund or the released persons beyond the amount allocated to them pursuant to this Memorandum and Order, and it is further

**ORDERED** that the Claims Administrator is hereby authorized to discard paper or hard copies of the Proofs of Claim and supporting documents not less than one year after the initial distribution of the Net Settlement Fund to the eligible claimants and electronic or magnetic media data not less than three years after the initial distribution of the Net Settlement Fund to the eligible claimants; and it is further

**ORDERED** that this Court shall retain jurisdiction over any further application or matter which may arise in connection with this action; and it is further

**ORDERED** that no claim submitted after the date of this Memorandum and Order may be accepted by the Claims Administrator.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:     March ___27___, 2013
           Central Islip, New York